NEWMEYER & DILLION LLP
CHARLES S. KROLIKOWSKI, CBN 185177
Charles.Krolikowski@ndlf.com
JASON MOBERLY CARUSO, CBN 287809
Jason.Caruso@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California 92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Plaintiffs
SCHUYLER LIFSCHULTZ, MYLES SACHS, and
ASHBY ENTERPRISES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCHUYLER LIFSCHULTZ; MYLES SACHS; and ASHBY ENTERPRISES, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SAN JUAN CAPISTRANO; J.R. TORREZ, individually; ALEJANDRA MOLINA, individually; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.:     8:19-cv-19-1497<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF 42 U.S.C. § 1983**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs Schuyler Lifschultz, Myles Sachs, and Ashby Enterprises, LLC (collectively, "Plaintiffs") by and through their counsel, complain against defendants City of San Juan Capistrano, J.R. Torrez, Alejandra Molina, and Does 1 through 100, inclusive (collectively, "Defendants") as follows:

## INTRODUCTION

1.  This is an action brought by Plaintiffs to vindicate profound deprivations of their constitutional rights caused by the persistent unlawful overreach of the City of San Juan Capistrano ("City").

2.  During the past year, and continuing without interruption to date, the

City has engaged in a campaign of harassment and vicious targeting of Plaintiffs.

3. The City's conduct has been directly aimed at Plaintiffs, as well as to the tenants of certain industrial real property located at 32951 to 32961 Calle Perfecto, San Juan Capistrano (the "Property").

4. The City has used a series of weapons against Plaintiffs and the tenants of the Property. These include issuing unfounded civil citations to Plaintiffs, their associates, and the Property's tenants, and working in concert with the Orange County Sheriff ("Sheriff") and the Orange County District Attorney ("OCDA") to cause Mr. Lifschultz to be criminally prosecuted without any cause whatsoever.

## JURISDICTION, VENUE, AND NOTICE

5. This action arises under the United States Constitution ("Constitution") and laws of the United States, including Article III, Section 1 of the Constitution, the Fifth Amendment and is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988. The federal question jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 2201.

6. This case is instituted in the United States District Court for the Central District of California pursuant to 28 U.S.C. §1391, as the judicial district in which all relevant events and omissions occurred and in which one or more Defendants maintain offices and/or reside.

7. On May 10, 2019, Plaintiffs caused a notice of claim pursuant to California Government Code section 900 et seq. to be personally delivered to the City. While no such notice of claim need have been served as a prerequisite to maintain this action, in any event, the City failed to act on the claim within 45 days of its receipt of the same.

## PARTIES

8. At times relevant hereto, Mr. Schuyler and Mr. Lifschultz have been residents of the State of Washington and citizens of the United States of America.

9. At times relevant hereto, Ashby Enterprises, LLC ("Ashby") has been

a Delaware limited liability company, which owns the Property and does business in California and this judicial district. Mr. Sachs is the owner and sole member of Ashby.

10. The City is a California municipal corporation and is the legal entity responsible for itself, its employees, and its agents. The City is a proper entity to be sued under 42 U.S.C. § 1983.

11. The City is properly sued directly under 42 U.S.C. § 1983 for its own and deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complained of constitutional and statutory violations and resulting injuries.

12. The City is also properly sued directly under 42 U.S.C. § 1983 for the challenged final decisions of any and all final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

13. At all times relevant hereto, J.R. Torrez was a citizen of the United States and a resident of the State of California and was acting under color of state law and within the scope of his employment in his capacity as a Code Enforcement Officer employed by the City. Officer Torrez is sued individually.

14. At all times relevant hereto, Alejandra Molina was a citizen of the United States and a resident of the State of California and was acting under color of state law and within the scope of her employment in her capacity as a Code Enforcement Officer employed by the City. Officer Molina is sued individually.

15. Plaintiff is presently unaware of the true names and capacities of Defendants Does 1 through 100, and accordingly sues said Defendants by such fictitious names. Plaintiffs will amend this complaint to set forth the true names and capacities of said Defendants when ascertained and as necessary. These fictitiously-named defendants are sued in their personal and official capacities.

16. Each Defendant, both named and fictitious, is and was the principal and/or agent and/or partner and/or alter ego and/or employee and/or employer and/or joint venture, conspirators, representatives and/or in some other capacity, however termed and/or described, of each of the other Defendants and/or is in some manner legally liable for the conduct and damages at issue in this action. Each Defendant, both named and fictitious, is and was at all material times acting within the course and scope of one or more of such relationships and with the express and/or implied knowledge, direction, approval and/or ratification of each of the other Defendants, and are therefore jointly and severally liable for the claims asserted herein.

## STATEMENT OF FACTS

17. Plaintiffs incorporate all the foregoing paragraphs of this complaint as if they were fully set forth herein.

18. At all times relevant hereto, Mr. Sachs has been the owner and sole member of Ashby, which itself is the owner of the Property more fully described above, as well as other property located in Southern California.

19. In a consistent and sustained course of conduct to present, the City and its officials, directors, agents, and employees have been engaged in a campaign of harassment and retribution against Plaintiffs.

20. On information and belief, this overarching campaign has occurred at the direction of, with the knowing acquiescence of, and/or the active ratification of the City's prior City Manager Karen Brust, and its current City Manager Ben Siegel. The City's City Manager is an apex decision- and policy-maker for purposes of a municipality's liability under 42 U.S.C. § 1983.

21. It is the long-standing and widespread custom, habit, practice, and/or policy of the City to pursue Plaintiffs, as further detailed below. The City's long-standing pursuit of Plaintiffs, as further detailed below, is so enshrined as to have become a policy of the City.

22. On information and belief, the City's animus against Plaintiffs is motivated by the hope that the Property will be sold to others.

23. The City has coordinated its campaign against Plaintiffs with Officers Torrez and Molina, the OCDA, the Sheriff, and the Orange County Fire Authority as part of the so-called San Juan Capistrano Police Services Group (the "Police Services Group"), an ad hoc task force whose raison d'etre has been the continued, coordinated pursuit of Plaintiffs via administrative, civil, and criminal prosecutions by these various agencies.

24. On information and belief, the City's participation in the Police Services Group (and its pursuit against Plaintiffs) via Officers Torrez and Molina, among others, was expressly, knowingly authorized and approved by the City's Assistant City Manager Jacob Green, as well as City Manager Ben Siegel. The City's participation in the Police Services Group was a matter of City policy at its highest level.

25. As detailed below, the Police Services Group (and the individual municipal and county employees named below) were co-conspirators such that each is responsible for the wrongs of the other. At all times relevant, those participating in the Police Services Group's pursuit of Plaintiffs knew that the other participants planned to engage in the wrongful acts, and each participant agreed and intended that the wrongful acts be committed.

26. In a consistent and sustained course of conduct to present, as members of the above-described Police Services Group, Officers Molina and/or Torrez have descended on the Property countless times, and have at various times perpetrated the following conduct:

- Issuing successive unsupported notices of violation and/or administrative citations to Plaintiffs and/or their agents, as well as tenants of the Property;
- Contacting tenants of the Property, despite knowing that they were

COMPLAINT FOR DAMAGES FOR
VIOLATIONS OF 42 U.S.C. § 1983                - 5 -
3733.101 / 8321447.1

represented by counsel;

- Encouraging tenants of the Property to make false and/or disparaging statements regarding Plaintiffs and/or their associates;

- Encouraging tenants of the Property to terminate their economic relationships with the ownership of the Property; and

- Encouraging the Property's tenants to pursue litigation against Plaintiffs and/or their associates.

27. For his part in the City's campaign against Plaintiffs, Officer Torrez in particular threatened tenants of the Property multiple times in his purported "enforcement" efforts against Plaintiffs. Officer Torrez's threats included that "things would only get worse" for the tenants; that Officer Torrez would "turn up code enforcement" on the tenants; that Officer Torrez would "red tag" the entire Property; and that the tenants should "just move" and the City would leave them alone. By these comments, Officer Torrez made it clear that his true target was Plaintiffs.

28. Mr. Sachs and Ashby have suffered harm on account of the foregoing conduct. The City's conduct amounts to a regulatory and de facto taking as to the Property.

29. Despite formal written notice that Mr. Lifschultz does not own or manage the Property, and is not a manager or member of Ashby, the City has persisted in issuing a series of citations to Mr. Lifschultz and/or criminally pursuing him for certain occurrences on the Property, baselessly asserting that Mr. Lifschultz manages the Property and/or somehow otherwise has legal control over the Property.

30. In one instance, Officers Molina and Torrez and City Building Official Carlos Yado descended on the Property, and claimed that a Property contractor was removing certain trees without a permit. Without any reasonable basis, the City issued Mr. Lifschultz a series of civil citations, attempting to impose a total fine of

$1,000.

31.  Mr. Lifschultz appealed the City's action to the Superior Court of California, County of Orange, which expressly found there was "no evidence" supporting the issuance of the citation to Mr. Lifschultz.

32.  However, the City did not stop at pursuing Mr. Lifschultz in a civil context. The City also attempted to pursue Mr. Lifschultz criminally for purported street damage that the City claimed was caused by a large metal shipping container that had been dragged along a street adjacent to the Property, purportedly causing damage to the asphalt.

33.  The entire basis for the City's claim appears to have been fabricated: witnesses indicated that the street was not in fact damaged.

34.  Despite having no direct evidence of Mr. Lifschultz's involvement, the City and its Police Services Group co-conspirator Deputy Sheriff Padilla labored mightily to concoct a connection to Mr. Lifschultz. Deputy Padilla, along with City Code Enforcement Officers Torrez and Molina, harassed and attempted to intimidate the Property's tenants to generate false statements and police reports in support of the City's claims.

35.  Thereafter, the City and its confederates caused an unfounded arrest warrant to be issued for Mr. Lifschultz for *felony vandalism* associated with the purported street damage. The City and its confederates in the Sheriff's office circulated an ominous email that the Police Services Group should be on the lookout for Mr. Lifschultz so they could arrest him. The email included the ominous statement, "Bottom line, full county service and *happy hunting!*" (Emphasis added.)

36.  The "happy hunting" email was forwarded directly to the City's Assistant City Manager Jacob Green, as well as City Manager Ben Siegel. On information and belief, neither Mr. Green nor Mr. Siegel ever expressed their disagreement with that email, the sentiment expressed therein, or the plan outlined

COMPLAINT FOR DAMAGES FOR
VIOLATIONS OF 42 U.S.C. § 1983                - 7 -
3733.101 / 8321447.1

therein. Mr. Green and Mr. Siegel thereby ratified the Police Services Group's planned malicious prosecution of Mr. Lifschultz, and accordingly made the City's participation in the same a matter of City policy at its highest level.

37. Rather than risk a physical arrest by the ill-intentioned Police Services Group, Mr. Lifschultz surrendered himself to the Superior Court of California, County of Orange, and was thereafter detained by the Sheriff.

38. The City's attempt to secure the criminal prosecution of Mr. Lifschultz had no cause or basis in fact, and ultimately failed. The OCDA dismissed the charges against Mr. Lifschultz, and the Superior Court found that Mr. Lifschultz was "factually innocent" of the charges against him. The Superior Court therefore also necessarily found there was no reasonable cause for the arrest or prosecution of Mr. Lifschultz. (Cal. Pen. Code, § 851.8 ["finding of factual innocence . . . shall not be made unless the court finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made"].)

39. The City and Officers Torrez and Molina have caused Plaintiffs to suffer general and special damages, in amounts to conform to proof at time of trial. The City and Officers Torrez and Molina have also caused Plaintiffs to expend tens of thousands of dollars in legal fees and related costs in response to their baseless pursuit of Plaintiffs and their associates in the administrative, civil, and criminal arenas.

40. The City and Officers Torrez and Molina have also caused Plaintiffs other damages, in amounts to conform to proof at time of trial, as a result of their conduct, including lost profits and lost economic opportunities as a result of their oppressive conduct.

41. The conduct of Officers Torrez and Molina as described herein was intended by to cause injury to Plaintiffs and was despicable conduct carried on with a willful and conscious disregard of the rights of Plaintiffs, or were intentional misrepresentations, deceit, or concealment of material facts subjecting Plaintiffs to

cruel and unjust hardship in conscious disregard of Plaintiffs' rights. At all times relevant, Officers Torrez and Molina acted with the intent to deprive Plaintiffs of their property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression, and/or fraud, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Officers Torrez and Molina.

42. Plaintiffs have at all times relevant acted reasonably to mitigate their damages.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments of the United States Constitution

### (By Mr. Lifschultz Against All Defendants)

43. Plaintiffs incorporate all the foregoing paragraphs of this complaint as if they were fully set forth herein.

44. Mr. Lifschultz is a citizen of the United States and Defendants are persons for the purposes of liability under 42 U.S.C. § 1983. Defendants were at all times relevant acting under color of state law.

45. Any individual defendants to this claim, at all times relevant, including not limited to Officers Torrez and Molina, were acting under the color of state law in their capacity as agents and/or employees of the City and their acts or omissions were conducted within the scope of their agency, official duties, and/or employment.

46. At the time of the complained of events, Mr. Lifschultz had the clearly established constitutional right to be free from malicious civil and criminal prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

47. Any reasonable agent or officer of the City knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

COMPLAINT FOR DAMAGES FOR
VIOLATIONS OF 42 U.S.C. § 1983
3733.101 / 8321447.1

- 9 -

48. Defendants and the Police Services Group violated Mr. Lifschultz's Fourth and Fourteenth Amended rights to be free from malicious prosecution without probable cause and without due process when they worked in concert to secure unfounded civil and criminal charges against him, resulting in his unlawful confinement and prosecution.

49. Defendants and the Police Services Group conspired and/or acted in concert to institute, procure, and continue 1) a criminal proceeding against Mr. Lifschultz for purported street damage and 2) a civil citation proceeding for purported unpermitted tree-cutting without probable cause.

50. Defendants engaged in the above-described conduct willfully, maliciously, in bad faith, and in reckless disregard of Mr. Lifschultz's federally protected constitutional rights.

51. The foregoing criminal and civil proceedings for purported street damage and unpermitted tree-cutting were all terminated in Mr. Lifschultz's favor. The criminal charges against Mr. Lifschultz were dismissed without compromise by Mr. Lifschultz, and he was found factually innocent of the same. As for the civil citation for purported unpermitted tree-cutting, the Superior Court found that there was no evidence for the issuance of such citation.

52. The acts or omissions of Defendants as described herein intentionally deprived Mr. Lifschultz of his constitutional and statutory rights and caused him other damages. Defendants are not entitled to qualified immunity for the complained of conduct.

53. Defendants' unfounded pursuit of civil and criminal prosecutions of Mr. Lifschultz were a matter of City policy at its highest level. The City's Assistant City Manager Jacob Green, as well as City Manager Ben Siegel, were directly involved in these efforts as detailed above.

54. As a direct, foreseeable, and proximate result of Defendants' conduct, Mr. Lifschultz has suffered general and special damages in amounts subject to

proof at time of trial. Mr. Lifschultz is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, as well as pre-judgment interest as allowable by federal law.

55. In addition to compensatory, economic, consequential and special damages, Mr. Lifschultz is entitled to punitive damages against Officers Torrez and Molina and each of the individual fictitiously-named Defendants under 42 U.S.C. § 1983, in that the actions of each of those individual Defendants for their part in the foregoing were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Mr. Lifschultz.

## SECOND CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Unlawful Taking of Private Property and Inverse Condemnation in Violation of the Fifth Amendment of the United States Constitution**

**(By Mr. Sachs and Ashby Against All Defendants)**

56. Plaintiffs incorporate all the foregoing paragraphs of this complaint as if they were fully set forth herein.

57. Mr. Sachs and Ashby make this takings claim to this Court in the first instance, as permitted by *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162 (2019).

58. Having an ownership interest in the Property, Mr. Sachs and Ashby have vested property rights. Mr. Sachs and Ashby have made substantial investments in the Property, including, without limitation, leasing out the Property and making improvements thereto, in reliance on their legal rights to conduct lawful and authorized business at the Property.

59. Mr. Sachs and Ashby have legal and vested rights to conduct business in connection with the Property, including but not limited to contracting with tenants to occupy the Property, and to realize the economic benefits of their investments in and reliance on such rights.

60. The City's actions, as described above, have the effect of foreclosing Mr. Sachs and Ashby's vested rights. The City has interfered with Mr. Sachs and Ashby's ability to lawfully exercise their rights to freely and lawfully utilize the Property. The various City actors, as well as other members of the Police Services Group, engaged in the above-described unlawful conduct under color of state law.

61. The City's coordinated campaign against and unlawful targeting of Mr. Lifschultz, Mr. Sachs, and Ashby amounts to a regulatory and de facto taking of the Property, in violation of Mr. Sachs and Ashby's Fifth Amendment rights.

62. Defendants' actions were a matter of City policy at its highest level. On information and belief, the City's Assistant City Manager Jacob Green, as well as City Manager Ben Siegel, were directly involved in Defendants' efforts to interfere with Mr. Sachs and Ashby's lawful exercise of their property rights.

63. As a direct, foreseeable, and proximate result of Defendants' conduct, Mr. Sachs and Ashby have suffered general and special damages, including past and future lost profits, in amounts subject to proof at time of trial. Mr. Sachs and Ashby are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, as well as pre-judgment interest as allowable by federal law.

64. In addition to compensatory, economic, consequential and special damages, Mr. Sachs and Ashby are entitled to punitive damages against Officers Torrez and Molina and each of the individual fictitiously-named Defendants under 42 U.S.C. § 1983, in that the actions of each of those individual Defendants for their part in the foregoing were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Mr. Sachs and Ashby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. As to the first claim, general and special damages, costs, attorneys' fees under 42 U.S.C. § 1988, pre-judgment interest, and punitive damages against

each of the individual Defendants, as well as any other relief this Court deems appropriate.

    2.    As to the second claim, general and special damages, costs, including past and future lost profits, attorneys' fees under 42 U.S.C. § 1988, pre-judgment interest, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of civil Procedure 38(b) as to all issues so triable.

Dated:    August 2, 2019        NEWMEYER & DILLION LLP

By: */s/ Jason Moberly Caruso*
Jason Moberly Caruso
Charles S. Krolikowski
Attorneys for Plaintiffs SCHUYLER LIFSCHULTZ, MYLES SACHS, and ASHBY ENTERPRISES, LLC