JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1497 JVS (ASDx) | Date | October 13, 2020 |
| Title | Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al | | |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:   [IN CHAMBERS] Order Regarding Motion to Dismiss**

Defendants the City of San Juan Capistrano (the "City"), J.R. Torrez ("Torrez"), and Alejandra Molina ("Molina") (together – "Defendants") moved to dismiss the second claim for relief in Plaintiffs Schuyler Lifschultz ("Lifschultz"), Myles Sachs ("Sachs"), and Ashby Enterprises, LLC ("Ashby") (collectively – "Plaintiffs"') Third Amended Complaint ("TAC"). Mot., Dkt. No. 55. Plaintiffs Opposed. Opp'n, Dkt. No. 57. Defendants replied. Reply, Dkt. No. 63.

For the following reasons, the Court **GRANTS** the motion.

**I. BACKGROUND**

The following facts are alleged in Plaintiffs' TAC.

Sachs is the owner and sole member of Ashby Enterprises, LLC. TAC, Dkt. No. 54 ¶ 10. Ashby owns real property located at 32951 to 32961 Calle Perfecto, San Juan Capistrano (the "Property"). Id. ¶¶ 3, 10. Lifschultz neither owns nor manages the Property. Id. ¶ 33. Lifschultz is neither a member nor a manager of Ashby. Id.

Sachs has invested significant amounts of time and money (hundreds of thousands of dollars) in making the Property more marketable and valuable. Id. ¶ 20. He had reasonable expectations that these investments would result in financial gain. Id.

The City and its officials, directors, agents, and employees have engaged in a sustained campaign of harassment against Plaintiffs. Id. ¶ 21. The City has pursued

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1497 JVS (ASDx)                    Date  October 13, 2020

Title  <u>Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al</u>

Plaintiffs in concert with City Code Enforcement Officers Torrez and Molina, the Orange County District Attorney ("OCDA"), the Sheriff, and the Orange County Fire Authority as part of the San Juan Capistrano Police Services Group (the "Police Services Group"), an ad hoc task force that exists solely to harass Plaintiffs via administrative, civil, and criminal prosecutions. <u>Id.</u> ¶ 25. The City is motivated to engage in this campaign by the hope that Sachs will sell the Property if his investment-backed expectations are sufficiently damaged. <u>Id.</u> ¶ 24.

The City's selective enforcement of Plaintiffs and the Property is evidence of the alleged targeting and harassment. <u>Id.</u> ¶ 26. The City selected the Property's tenants for particular scrutiny: for example, K9 City, a tenant, was subjected to harassment throughout the conditional-use permit application process, while Zuri Pet Spa, a similar business located nearby on a different property, did not face any of the same difficulties. <u>Id.</u>

Members of the Police Services Group descended on the Property several times to issue unsupported notices of administrative violations, contact the Property's tenants and threaten them, encourage tenants to make false and/ or disparaging remarks about Plaintiffs, encourage tenants to pursue litigation against Plaintiffs, and discourage prospective tenants from leasing space at the Property. <u>Id.</u> ¶ 29.

Torrez threatened tenants of the Property multiple times, telling them that "things would only get worse," that he would "turn up code enforcement" on them, that he would "red tag" the entire Property, and that they should "just move." <u>Id.</u> ¶ 30.

Plaintiffs have suffered harm as a result of the aforementioned conduct. <u>Id.</u> ¶ 31. One tenant, Custom Auto Body, stopped paying rent and initiated litigation against Sachs and Ashby. Another tenant, Bumpin Broadcast Studios ("Bumpin"), was harassed and cited by the City and subsequently terminated its tenancy, losing its leasehold and capital investments in the Property. <u>Id.</u> ¶ 26. Valuable space at the Property remained vacant for an inordinate period of time, costing Sachs and Ashby tens of thousands of dollars per month in rent. <u>Id.</u> ¶31. The loss of existing and prospective tenants, along with the cloud placed over the Property, has made the Property uneconomical to operate, as it is now operating at a loss when compared to its value. <u>Id.</u>

At the direction of the City Attorney and with the knowledge of City Building and

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1497 JVS (ASDx) | Date | October 13, 2020 |
| Title | Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al | | |

Code Enforcement Manager Carlos Yado ("Yado") and Director of Development Joel Rojas, Torrez harassed tenants of the Property to render false and disparaging remarks about Plaintiffs and the Property. Id. ¶ 32. Torrez obtained at least one such remark by falsely asserting that he had confirmed the signatory's identity by reviewing his driver's license, which Torrez had not done. Id. Torrez continued to issue citations to Lifschultz concerning the property, even after Lifschultz repeatedly informed the City that he was not a property manager or otherwise responsible for the Property. Id. ¶ 32. Molina concealed the existence of an arrest warrant from Lifschultz when meeting with him, and Torrez entered portions of the Property multiple times without seeking consent or a warrant. Id.

In one instance, Molina, Torrez and Yado issued Lifschultz a series of civil citations imposing a total fine of $1,000 for removing certain trees without a permit. Id. ¶ 34. Defendants issued these citations without investigating the actual contractor that cut down the trees, as an investigation would have revealed that Lifschultz had nothing to do with the tree-cutting. Id. ¶ 35, 36, 37. Lifschultz appealed these citations to the Superior Court of California, Orange County, which found there was no evidence to support the citation. Id. ¶ 38.

The City also attempted to pursue Lifschultz criminally for purported street damage that the City alleged was caused by a large metal shipping container that had been dragged along a street adjacent to the Property. Id. ¶ 39–40. The street had not, in fact, been damaged. Id. ¶ 40. The City estimated that it would cost $18,576 to address the purported damage to the 1,300 cubic feet of asphalt at issue. Id.

In an effort to arrest Lifschultz for the asphalt damage, the Police Services Group harassed tenants at the Property to generate false statements in support of what would become an arrest warrant for felony vandalism. Id. ¶ 41–42. The City and its confederates in the Sheriff's office sent an email to the Police Services Group that included the statement: "Bottom line, full county service and happy hunting." Id. ¶ 43. The email was also sent to City Assistant Manager Jacob Green and City Manager Ben Siegel. Id. ¶ 44. Around the same time, the Sheriff's office sent the City and various city officials correspondence indicating that the Sheriff would pursue restitution on behalf of the City from Lifschultz in connection with his prosecution. Id. ¶ 45.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1497 JVS (ASDx)                Date   October 13, 2020

Title   Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al

    Defendants and the Police Services Group descended on the Property with the stated intent to arrest Lifschultz, but this stated intent was a sham given that at all relevant times Defendants and the Police Services Group knew that Lifschultz resided in Washington and would not be present at the property. Id. ¶ 46. On this visit, Defendants and the Police Service Group shattered windows, broke down doors, and seized property absent any exigency or safety issue. Id. ¶ 47. Neither Sachs nor Ashby received an apology or compensation for the damaged property. Id. Molina and Yado knew about and participated in this raid. Id. ¶ 48. Lifschultz surrendered himself to the Superior Court of California, County of Orange, but the OCDA found that he was "factually innocent" of the charges. Id. ¶ 49–50.

    Torrez and Molina acted with intent to deprive Plaintiffs of their property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression, and/ or fraud. Id. ¶ 53. Torrez and Molina caused Plaintiffs to suffer general and special damages, expend legal fees, and suffer lost profits and economic opportunities. Id. ¶ 51–53.

    Plaintiffs filed their Complaint on August 2, 2019, asserting two causes of action. See Dkt. No. 1. The Court granted Defendants' motion to dismiss the second cause of action on December 10, 2019. See First MTD Order, Dkt. No. 24. Plaintiffs filed their First Amended Complaint ("FAC") on December 27, 2019. See FAC, Dkt. No. 27. The court granted Defendants' motion to dismiss the second cause of action on March 9, 2020. See Second MTD Order, Dkt. No. 33. Plaintiffs filed their Second Amended Complaint ("SAC") on April 8, 2020. See SAC, Dkt. No. 34. The Court granted Defendants' motion to dismiss the same claim on June 8, 2020. See Third MTD Order, Dkt. No. 40. Plaintiffs filed their TAC on August 5, 2020. See TAC.

    In the TAC, Plaintiffs again assert a cause of action for "malicious prosecution" in violation of the Fourth and Fourteenth Amendments. Id. ¶¶ 55-67. The second cause of action, by Sachs and Ashby, is for "unlawful taking of private property and inverse condemnation" in violation of the Fifth and Fourth Amendments. Id. ¶¶ 68–84.

## II. Legal Standard

    Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim

Case 8:19-cv-01497-JVS-ADS   Document 68   Filed 10/13/20   Page 5 of 9   Page ID #:843

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1497 JVS (ASDx)                                    Date  October 13, 2020

Title     Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al

upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### III.  DISCUSSION

Defendants argue that the TAC fails both to allege a regulatory taking and state a claim for unreasonable search and seizure in violation of the Fourth Amendment. See generally Mot., Dkt. No. 55.

The Takings Clause of the Fifth Amendment provides: "[N]or shall property be taken for public use, without just compensation." A "regulatory taking" occurs when a regulation "denies all economically beneficial or productive use of land." Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1016 (1992). State action in the form of land-use regulation violates the Fifth Amendment when it "does not substantially advance legitimate state interests or denies an owner economically viable use of his land." Id. (Internal citation omitted). In order to avoid acting in violation of the Fifth Amendment, the government must pay just compensation for such "total regulatory takings," except to the extent that "background principles of nuisance and property law" work to independently restrict the owner's intended use of the property. Id. at 1026–32. The general rule "is that while property may be regulated to a certain extent, if regulation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1497 JVS (ASDx)                    Date  October 13, 2020

Title    Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al

goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922).

"[W]here the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." Yee v. City of Escondido, 503 U.S. 519, 522 (1992). Whether a regulation or law unlawfully infringes upon a landowner's property in violation of the Takings Clause is an "ad hoc, factual inquir[y]," that requires an analysis of factors including the "character of the governmental action," its "economic impact," and its interference with "investment-backed expectations." Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978). "A regulation that adversely affects property values does not constitute a taking unless it destroys a major portion of the property's value." Moore v. City of Costa Mesa, 886 F.2d 260, 263 (9th Cir. 1989). Further, "loss of anticipated gains or future profits is not usually sufficient to constitute a taking." Id.

The TAC alleges that the City's harassment and targeting of the Property caused the loss of two tenants: Bumpin and Custom Auto Body. TAC ¶¶ 26, 31. The fact that two tenants terminated their leases, along with the loss of future income from prospective tenants who are dissuaded from renting from Plaintiffs by the cloud that this harassment has placed over the Property, has made the Property uneconomical to operate. Id. ¶ 31. Plaintiffs expand on the regulatory taking allegations in the SAC by adding to the TAC that "prior to the City's actions as described herein, the Property was generating hundreds of thousands of dollars in revenue consistent with the value of the Property and the economic investments made therein. In contrast, during and even after the City's misconduct has temporarily subsided, the Property is operating at a loss when compared to its value and investments." Id.

Plaintiffs' allegations still fail to state a claim for a regulatory taking. Plaintiffs have alleged that two tenants terminated their tenancies because of Defendants' conduct. Id. ¶¶ 26, 31. Plaintiffs also newly allege that "…the inability to attract new tenants, and the cloud placed over the Property" has interfered with future rental profits. Id. ¶ 31. Nonetheless, Plaintiffs fail to sufficiently allege that Defendants' actions "destroy[ed] a

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1497 JVS (ASDx) | Date | October 13, 2020 |
| Title | Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al | | |

major portion of the Property's value." See Moore, 886 F.2d at 263-64; TAC ¶¶ 26, 31. As such, the Court finds that Plaintiffs have not stated a claim for a regulatory taking.

The Court also finds that Plaintiffs may not assert a regulatory taking claim on behalf of former tenant Bumpin. See TAC ¶ 80. Plaintiffs' claims on behalf of Bumpin are precluded by the August 14, 2019, Orange County Superior Court Order Denying Petition for Writ of Mandate. See Req., Dkt. No. 56. Res judicata "bars any subsequent suit on claims that were raised or could have been raised in a prior action." Cell Therapeutics, Inc. v. Lash Group, Inc., 586 F.3d 1204, 1212 (9th Cir. 2009). In determining the res judicata effect of a state court judgment, federal courts must apply state law of the court rendering judgment. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Here, that is California. Under California law, res judicata applies when "(1) [a] claim ... raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." People v. Barragan, 83 P.3d 480, 492 (Cal. 2004).

In determining whether a claim is "identical to a claim ... litigated in a prior proceeding" for purposes of res judicata, California employs the primary rights theory. Boeken v. Philip Morris USA, Inc., 230 P.3d 342 (Cal. 2010). Under the primary rights theory, "[t]here is an identity of claims if the two proceedings are based on the same primary right or injury." Lodin v. Bank of Am., N.A., 2014 WL 296927, at *3 (N.D. Cal. Jan. 27, 2014) (internal quotation marks omitted). Because the primary rights theory looks to a plaintiff's injury to determine whether claims are identical, primary rights analysis therefore focuses on "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." Id. Accordingly, "if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake[,] even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys., 568 F.3d 725, 734 (9th Cir. 2009) (internal quotation marks omitted).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1497 JVS (ASDx)                    Date   October 13, 2020

Title   Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al

    The Court finds that Bumpin has already litigated this identical claim. In Bumpin's complaint to the Superior Court, Bumpin asserted that the City's refusal to provide them with a business license amounted to "a regulatory taking and inverse condemnation." See Req., Dkt. No. 56. Exh. 1 ¶ 25. This complaint together with the Superior Court's order indicate that Bumpin litigated the merits of the regulatory taking claim. See Id. Moreover, the time for appeal on that matter has passed, rendering the decision final. See Reply, Dkt No. 63. Bumpin's claim for a regulatory taking is thus precluded, meaning that Sachs and Ashby are similarly precluded from re-litigating it on Bumpin's behalf.

    Finally, the Court finds that Plaintiffs fail to assert a claim for unreasonable search and seizure in violation of the Fourth Amendment. See TAC ¶¶ 68–84. Plaintiffs lack Fourth Amendment standing to bring this claim. An individual may only allege a violation of his own Fourth Amendment rights. See U.S. v. SDI Future Health, Inc. 568 F.3d 684, 695 (2009). Fourth Amendment standing "is a matter of substantive [F]ourth [A]mendment law; to say that a party lacks [F]ourth [A]mendment standing is to say that *his* reasonable expectation of privacy has not been infringed." Id. at 695 (quoting United States v. Taketa 923 F.2d 665, 669 (9th Cir. 1991) (emphasis original)). The search warrant executed in this case sought evidence to prosecute Lifschultz. TAC ¶ 42. Sachs and Ashby were connected to the Property insofar as they owned the space, but they were neither the targets of the search nor were they present at the time of the search. Id. *in passim*. Moreover, "[a]n expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." New York v. Burger 482 U.S. 691, 700 (1987). Plaintiffs fail to assert that they had a reasonable expectation of privacy in the portion of the Property that was searched for evidence against Lifschultz. TAC, *in passim*. As such, the Court finds that Plaintiffs did not allege a violation of their own Fourth Amendment rights, and thus lack standing to bring this claim.

    Further, even if Plaintiffs do have standing, they fail to plausibly allege facts sufficient to raise a claim for a Fourth Amendment violation. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." The United States Supreme Court has held that "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." U.S. v. Ramirez 523 U.S. 65, 71 (1998). Plaintiffs

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1497 JVS (ASDx) | Date | October 13, 2020 |
|---|---|---|---|

| Title | Schuyler Lifschultz, et al v. City of San Juan Capistrano, et al |
|---|---|

allege that the police raid of the Property constituted an unreasonable search and seizure because "[u]nnecessary damage to property gives rise to an actionable Fourth Amendment violation." TAC ¶ 76. Further, Plaintiffs assert that the raid was "objectively unreasonable, in that there was no reason for the destruction of Mr. Sachs and Ashby's property." Id. ¶ 77. The property damage to which Plaintiffs refer resulted from the raid on the Property during which "Defendants and the Police Services Group, with guns drawn in tactical gear, shattered various windows, broke down doors, and seized various property." Id. ¶ 47. The raid was executed "with the stated intent to arrest Mr. Lifschultz," although Plaintiffs allege that "this stated intent was a sham: Defendants and the Police Services Group at all times relevant knew that Mr. Lifschultz resided in the state of Washington, would therefore not be present at the Property, and was not in fact present at the Property when they descended upon it." Id. ¶ 46. These assertions do not give rise to a cognizable Fourth Amendment claim for excessive or unnecessary destruction of property. Plaintiffs' bare allegations that the search was conducted unreasonably do not constitute facts sufficient to support a claim that the search was unreasonable. Plaintiffs' statements that the search was conducted unreasonably are conclusory and do not plausibly raise a Fourth Amendment violation under the Twombly and Iqbal standards.

Having granted Plaintiffs leave to replead three times, the Court believes that Plaintiffs have had adequate opportunity to plead viable claims, but have failed to do so. Accordingly, the motion is granted with prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion with prejudice.

**IT IS SO ORDERED.**